**KEKER VAN NEST & PETERS**   **LATHAM & WATKINS LLP**   **MORRISON FOERSTER**

November 22, 2024

Hon. Ona T. Wang
United States Magistrate Judge
Southern District of New York
New York, New York 10007

      Re:    *Authors Guild v. OpenAI Inc.*, 23-cv-8292 (S.D.N.Y.) and *Alter v. OpenAI Inc.*, 23-cv-10211 (S.D.N.Y.): Data Working Group (ECF 267)

Dear Magistrate Judge Wang:

Plaintiffs do not, and cannot, dispute that documents pertaining to the Data Working Group ("DWG") will be privileged. They concede the DWG at least "touches on legal issues." ECF 267 at 3. Instead, Plaintiffs contend that OpenAI should be compelled to search for lawyers' documents relating to the DWG and log the privileged documents OpenAI is certain to find. *Id.*

The Court should deny Plaintiffs' request as unduly burdensome because the fundamental premise underlying Plaintiffs' motion is wrong. The DWG does not simply "touch[] on legal issues." *Id.* at 3. It exclusively serves a legal function. As a result, documents relating to the DWG will be overwhelmingly, if not entirely, privileged. OpenAI should not be compelled to bear the burden of collecting, reviewing, and logging documents authored by lawyers, on topics relating to legal issues, that were discussed among the parties' legal teams sharing a common legal interest. The motion should be denied.

### *OpenAI and Microsoft's Data Working Group Discusses Common Legal Interests*

The common interest doctrine "protect[s] the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). "[C]ommunications made in the course of an ongoing common enterprise and intended to further the enterprise are protected" so long as "the communication in question was given in confidence and that the client reasonably understood it to be so given." *Id.* at 243-44. Companies exercise legal prudence when, acting together, they "seek legal advice and assistance in order to meet legal requirements and to plan their conduct." *In re the Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996) (granting writ of mandamus to prohibit discovery of documents protected by the common interest doctrine).

Using data to train large language models ("LLMs") implicates numerous legal issues. In addition to copyright claims, plaintiffs before this and other courts have asserted legal theories sounding in trademark, privacy, negligence, contract, unjust enrichment, conspiracy, and unfair competition against one or both of OpenAI and Microsoft. Pantuliano Decl. Ex. B. OpenAI and Microsoft share a common interest in discussing these legal issues both within and outside of litigation.

The DWG serves a legal function. It was formed as part of an agreement between OpenAI and

Microsoft. *Id*. ¶ 2. It was set up to . *Id*. ¶ 4. It was formed after OpenAI and Microsoft had already been sued as co-defendants in a putative class action relating to data usage. *Id*. ¶ 5. The purpose of the DWG is to discuss OpenAI and Microsoft's common legal interests in ███████████████████████████████████████. *See id*. ¶¶ 4-5. All of OpenAI's members of the DWG have been lawyers working as lawyers to develop legal advice and legal strategies relating to data issues. *Id*. ¶¶ 6-7. OpenAI understands that all Microsoft members of the DWG are members of the Microsoft legal team. *Id*. ¶ 8. OpenAI and Microsoft ████████████████████████████████████████████████. *See id*. ¶ 5a. And although "[a] formal written common interest agreement is not necessary," *United States v. Zhu*, 77 F. Supp. 3d 327, 330 (S.D.N.Y. 2014), OpenAI and Microsoft memorialized their common legal interest in a formal written agreement a short time after their first meeting. *See* Pantuliano Decl. ¶ 5a.

***Plaintiffs Seek Common Interest Protected Documents***

Given the DWG's legal scope and purpose, Plaintiffs seek privileged documents. Companies may share common legal interests related to legal strategy and compliance both in the context of litigation and outside it. *See, e.g.*, *Schwimmer*, 892 F.2d at 243 ("The joint defense privilege, more properly identified as the 'common interest rule,' has been described as 'an extension of the attorney client privilege.' It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.") (internal citations omitted); *United States v. BDO Seidman LLP*, 492 F.3d 806, 816 (7th Cir. 2007) (finding a common legal interest in tax compliance); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 417 (N.D. Ill. 2006) (finding a common legal interest in antitrust compliance).

Contrary to Plaintiffs' assertion (ECF 267 at 3), which is not supported by the cases they cite, the application of the common interest doctrine is not "almost unfailing [sic] rejected absent concretely anticipated litigation." *See* Restatement (Third) of the Law Governing Lawyers § 76 (2000) (defining the doctrine to apply where there is a "common interest in a litigated or nonlitigated matter"). In the words of Plaintiffs' cited case, "it is not necessary for litigation to be in progress for the common interest doctrine to apply." *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (citing *Schwimmer,* 892 F.2d at 244). But even Plaintiffs' attempted "concretely anticipated litigation" distinction is a sideshow. OpenAI and Microsoft have been co-defendants in litigation relating to data use issues regarding LLMs since before and throughout the DWG's existence. Pantuliano Decl. ¶ 5b.

***The DWG Develops Legal and Not Business Strategy***

The DWG does not serve a business function. The DWG . Pantuliano Decl. ¶ 9. The DWG ████████████████████████ *Id.* And the DWG

2

███████████████████████████████████████████████████████████████████████████. *Id.*

Plaintiffs contend that "████████████████" must mean the business ██████████████████████████████████████████████████████." ECF 267 at 1. Plaintiffs are incorrect; business strategy is not a function of the DWG. *See* Pantuliano Decl. ¶¶ 4, 5, 7. But even if Plaintiffs were right, ████████████████████████████████████████ implicate numerous legal interests. "Communications do not cease to be for the purpose of receiving legal services just because the recipient intended to use the fruits of the legal services to guide its relations with customers." *BDO Seidman, LLP*, 492 F.3d at 817.

Plaintiffs also assert that the DWG must fulfill a business function because the group considers "commercial applicability and suitability" and risk assessments for those "intended use[s]." *See* ECF 267 at 1, 2 (citing Ex. 1 at -644). But consideration of "commercial applicability and suitability" and "intended use" is part of, e.g., a ***legal*** risk assessment relating to the ***legal*** issue of fair use. *See* 17 U.S.C. § 107(1) (requiring assessments of "the purpose and character of the use"); *Andy Warhol Found. v. Goldsmith*, 598 U.S. 508 (2023) (requiring factual analysis, including of commerciality, of allegedly infringing uses as part of a fair use analysis).

Plaintiffs also assert, based on the website of a third party with no affiliation to OpenAI, that an OpenAI lawyer works in a "commercial role" at OpenAI. ECF 267 at 3. But even if true, that fact has no bearing on the relevant question here: whether his work *on the DWG* was commercial in nature. It wasn't. As confirmed by an OpenAI member of the DWG since day one, all OpenAI members at all times have been lawyers working in their legal capacity when acting as members of the DWG. *See* Pantuliano Decl. ¶ 6.

Finally, Plaintiffs mistakenly point to an email, ECF 267-2, as alleged proof that the DWG included non-lawyers discussing business issues. However, Plaintiffs misunderstand that email, which does ***not***, in fact, relate to the DWG. Pantuliano Decl. ¶ 10. The DWG, at all times, has served an exclusively legal purpose. *See id.* ¶¶ 6-9.

### *Discovery into the DWG is Disproportionate to the Needs of the Case*

Plaintiffs do not need discovery into the DWG to get the information they say they need. Plaintiffs claim DWG documents might be responsive to "the existence or development of [a] licensing market" or "evidence of the value attributed to a license." ECF 267 at 2. But OpenAI has already agreed to produce its agreements with third parties and related non-privileged communications. If current custodians communicated with DWG members about topics otherwise responsive to issues in this case, those communications will already be either logged (if privileged) or produced (if not). None of the current or additional custodians sought by the Plaintiffs are members of the DWG. *See* Pantuliano Decl. ¶ 6. Plaintiffs' request, therefore, is really about forcing OpenAI to add ***lawyers*** as new custodians, and then incur the significant cost of reviewing their communications, likely only to produce a privilege log.

Plaintiffs' request for discovery into the DWG should be denied. The activities of the group are protected by the common interest doctrine. In the alternative, OpenAI requests that the parties be allowed to submit full briefing on this issue given the privilege interests that are implicated.

Sincerely,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON FOERSTER |
|---|---|---|
| */s/Christopher Sun* | */s/Elana Nightingale* | */s/Vera Ranieri* |
| Christopher Sun | Elana Nightingale | Vera Ranieri |