**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

# Susman Godfrey l.l.p.
a registered limited liability partnership



March 31, 2025

<u>VIA ECF</u>

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

      RE:    *Authors Guild v. OpenAI Inc.*, 23-cv-8292 (S.D.N.Y.) and *Alter v. OpenAI Inc.*, 23-cv-10211 (S.D.N.Y.)

Dear Judge Wang:

Pursuant to Rule II(b) of Your Honor's Individual Practices, Plaintiffs seek a conference regarding Microsoft's refusal to produce financial information regarding products that use OpenAI's LLMs (RFP Nos. 62, 63, 65; ROG No. 6).[1] This material is relevant to the liability claims against Microsoft (such as the benefits it receives from its relationship with OpenAI) and remedies, especially should Plaintiffs elect disgorgement.

## I.    BACKGROUND

On August 14, 2024, Plaintiffs served RFP No. 62 which seeks "documents sufficient to identify Your gross revenues, net revenues, and profits, by month, from Your commercial products that include or use ChatGPT[2] or Large Language Models." Ex. A at 32.

Microsoft is improperly limiting its production to: (1) products that are priced *specifically* for "providing OpenAI GPT LLM capability", that is, products whose *name* refers to OpenAI GPT versus the complete (though limited) set of products into which OpenAI GPT is directly integrated, *id*. at 33, and (2) products that relate to GPT-3 and GPT-3.5, versus the later models in this case. *See* Ex. B at 1. Microsoft is thus withholding relevant evidence of the revenues and profits it derives from GPT-powered products, based only how those products are priced, *id*. at 2, and information relevant to models this Court *already* has determined to be in the scope of the complaint. Microsoft argues that if their pricing is not "directly generated by the commercialization of GPT LLM Capabilities" then their profit is not attributable to the alleged infringement as required by 17 U.S.C.A. § 504 (b). *Id*. at 3. As to point (2) and (3), Microsoft contends that discovery is limited to GPT-3 and GPT-3.5 because the operative complaint (Dkt.

---

[1] This motion addresses RFP No. 62. However, Microsoft is also withholding financial information responsive to RFP Nos. 63, 65 and ROG No. 6, (*i.e.* regarding Microsoft's commercial products that use OpenAI's LLMs) on the basis of the same disputed objection.

[2] The requests define ChatGPT to include "all consumer-facing versions of the chatbot application OpenAI released in November 2022 [] and any LLM underlying those consumer-facing applications." Ex. A at 4.

March 3, 2025
Page 2

69) only explicitly mentions products that are using those models. *Id*. at 1. The parties conferred on this issue via Zoom on February 18 and reached impasse on March 24.

**II.    ARGUMENT**

The Copyright Act provides that a copyright holder may elect to disgorge an infringer's profits. 17 USC §504(b). Plaintiffs are ultimately required to submit evidence (and thus are entitled to develop evidence) of gross revenue that is "reasonably related to the infringement." *Graham v. Prince*, No. 15-CV-10160 (SHS), 2023 WL 5917712, at *4 (S.D.N.Y. Sept. 11, 2023) (quoting *Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001), as amended (May 15, 2001)).

    **1.    Microsoft's product pricing does not define the scope of Plaintiffs' discovery.**

Plaintiffs are entitled to discovery relating to profits that "arise from the sale of the infringing good." *Prince*, 2023 WL 5917712, at *5. Here, that would include profits from any product powered by an allegedly infringing LLM. Microsoft contends that its profits from GPT-powered products that are not priced *explicitly* for their GPT capabilities are "indirect profits" and are non-discoverable because they lack a sufficient causal nexus to the infringement. This argument misunderstands direct versus indirect profits. Microsoft has integrated the allegedly infringing LLMs into many of its products——including [REDACTED] (Ex. C)—and thus the profits derived from those products are direct profits. *See Semerdjian v. McDougal Littell*, 641 F. Supp. 2d 233, 248 (S.D.N.Y. 2009) (explaining that direct profits occur when an "infringing use of a copyrighted work in a product for sale [causes] revenues by increasing the value of the product for sale."). Indirect profits are profits entirely attenuated from the infringing products—such as profits "derived from the use of the copyrighted work to promote sales *of other products*." *Graham v. Prince*, 265 F. Supp. 3d 366, 388 (S.D.N.Y. 2017) (emphasis added). Here, it is undisputed that Microsoft has integrated the infringing LLMs into a host of its products. *See* Ex. C. Accordingly, the profits from these products are direct profits and discoverable. *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 927 (N.D. Ill. 2009) (finding that profits from sales of textbook were direct where copyrighted work "form[ed] an integrated component of the textbook.").

To the extent Microsoft claims that the material sought would cover profits not *entirely* due to the infringing activity, that is a question of apportionment, not relevance. *See Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121 (2d Cir.1962). Plaintiffs do not have to show that the "profits derived solely and directly from the infringing activity," *Graham*, 265 F. Supp. 3d at 388, only that the profits/revenue are "reasonably related to the infringement." *Davis*, 246 F.3d at 160. Indeed, at the discovery stage, courts have rejected any requirement that Plaintiffs even prove the profits are attributable to the infringement. *See, e.g., Prolo v. Blackmon*, 2022 WL 2189643, at *9 (C.D. Cal. Mar. 25, 2022); *see also Sys. Am., Inc. v. Rockwell Software, Inc.*, 2007 WL 1593219, at *2 (N.D. Cal. June 1, 2007).

### 2. Microsoft's limitation to GPT-3 and GPT-3.5 contravenes this Court's orders and is unsupported.

Microsoft's attempt to limit discovery to GPT-3 and 3.5 is at odds with this Court's prior ruling that the scope of discovery extends to all "models identified in response to [OpenAI's] interrogatory #11[,]" (Dkt. No. 293), which includes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. D (OpenAI's Supplemental Response to Interrogatory No. 11).

It is also untethered from Plaintiffs' allegations. The complaint alleges that Microsoft "ha[s] enjoyed substantial commercial gain from GPT-*based* commercial offerings …", and not just GPT only. Dkt. 69 at ¶ 164 (emphasis added).[3] The pleadings are clear that the relevant commercial offerings include: (1) products powered by GPT-4 and GPT-4 Turbo (*id.* at ¶¶ 4, 15, 93, 123 *et seq.*, 133, 139, 164, 167); and (2) products using then-unreleased GPT-versions (*e.g.* GPT-4o and GPT-4 mini) that are the result of Defendants' ongoing infringing activity. *Id.* at ¶¶ 76 ("OpenAI continues to produce new version of their LLMs supported by increasingly more 'training' data, much of which is copyrighted material"), 416 ("Defendants' infringing conduct … continues to be willful"), 430 ("injunction prohibiting Defendants from infringing on Plaintiffs' … copyrights").

For the foregoing reasons, Plaintiffs respectfully request that the Court direct Microsoft to produce responsive financial information relating to Microsoft products powered by GPT-4, GPT-4 Turbo, GPT-4o, and GPT-4 mini.

Sincerely,

| LIEFF CABRASER HEIMANN & BERNSTEINS LLP | SUSMAN GODFREY LLP | COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP |
|---|---|---|
| /s/ Rachel Geman<br>Rachel Geman | /s/ Rohit Nath<br>Rohit Nath | /s/ Scott J. Sholder<br>Scott J. Sholder |

---

[3] These commercial offerings are not limited to products explicitly mentioned in the complaint. *Id.* at ¶¶ 4, 9, 14, 15, 139, 164, 166-67. All paragraphs mentioning Microsoft products use words like "including" and "like", making clear that those products do not represent the full list of Microsoft's commercial offerings.