# EXHIBIT 9



faegredrinker.com

**Jared B. Briant**
Partner
jared.briant@faegredrinker.com
+1 303 607 3588 direct

Faegre Drinker Biddle & Reath LLP
1144 15th Street, Suite 3400
Denver, Colorado  80202
+1 303 607 3500 main
+1 303 607 3600 fax

March 5, 2025

**<u>VIA E-MAIL</u>**

Alter-AI-TT@simplelists.susmangodfrey.com

Re:   Plaintiffs' February 4, 2025 Letter and Related Conferral in *Authors Guild v. OpenAI Inc.*, No. 1:23-cv-8292-SHS-OTW (S.D.N.Y.), *Alter v. OpenAI Inc.*, No. 1:23-cv-10211-SHS-OTW (S.D.N.Y.)

Dear Counsel:

We write to respond to your February 19 and 21, 2025 emails that followed our February 18, 2025 meet and confer regarding Plaintiffs' February 4 letter regarding Microsoft's Supplemental Responses to Plaintiffs' Second Set of Requests for Production and other topics. We will write separately to address Plaintiffs' RFP Nos. 62, 63, and 65 (item 7 in your February 19 email). We will also email separately regarding the additional search terms Plaintiffs requested on February 4, as modified per the parties' other correspondence since then (items 2 and 11 in your February 19 email); Microsoft is evaluating Plaintiffs' most recent version of that request.

### I.   Custodians for RFP No. 46 (item 1 in your February 19 email)

We can confirm that Geraldine Russell will be a custodian for the targeted search and collection Microsoft is conducting for this RFP, for which Microsoft has agreed to produce documents concerning negotiations that resulted in executed licenses and/or data access agreements for LLM training data, as stated in Microsoft's responses to that RFP. We anticipate there may be additional custodians and will follow up when we have confirmation on this.

### II.   Slack Messages (item 3 in your February 19 email)

We understand from OpenAI that production of Slack messages including Microsoft custodians is largely complete. We do not agree with your statement that we "agreed to find out whether the Slack channels were only used by Microsoft onsite employees and confirm[] that you have produced documents sufficient to show all Microsoft employees that have worked onsite at OpenAI." We stated at the meet and confer that we believe Microsoft has produced documents sufficient to show the identify of Microsoft onsite engineers at OpenAI. Plaintiffs stated, both at the meet and confer and near the end of your February 19 email, that they would review Microsoft's productions. Additionally, on December 4, 2024, in response to Plaintiffs' Interrogatory No. 6,[1] Microsoft identified which of its custodians used Slack to communicate with individuals at

---

[1] As detailed in Microsoft's Responses to both Plaintiffs' so-called "Interrogatories to Microsoft on Custodians and Repositories" on December 4, 2024, and Plaintiffs' so-called "Third Set of Interrogatories" on February 28, 2025, Plaintiffs should have captioned this Interrogatory as No. 6 instead of No. 1.

DMS_US.369731012.3

Counsel for *Authors Guild* and	- 2 -	March 5, 2025
*Alter* Plaintiffs

OpenAI. Nothing more is required of Microsoft at this point, and Microsoft once again declines Plaintiffs' request for Microsoft analyze its own discovery responses and productions for Plaintiffs' purposes.

### III.    RFP No. 42 and Copilot (item 4 in your February 19 email)

We can confirm that Microsoft is not excluding "Copilot," as we understand Plaintiffs to be using that term, from its production of documents in response to RFP No. 42, as stated in Microsoft's responses to this RFP. "Copilot" is used by Microsoft as a brand and refers to a variety of products and functionality. The product Microsoft released under the name "Bing Chat" in February 2023 was later rebranded "Copilot." This is the product we are referring to when we discuss Bing Chat and/or Copilot in the context of these actions and is the product occasionally referenced in Plaintiffs' Complaint. This product was deprecated as of October 1, 2024, and the product now available via, for example, copilot.microsoft.com is a different product from the one originally released as Bing Chat.[2]

### IV.    RFP No. 78 and Copilot (item 5 in your February 19 email)

We can confirm that Governing Board documents related to Bing Chat/Copilot are not being excluded from collection or production. We are not able to represent that "all meeting minutes, notes, or other summaries from these meetings of the Governing Board" are being produced, as Plaintiffs now request, as Microsoft's responses did not state that Microsoft would produce "all" such documents. Microsoft is producing documents as stated in its responses, as further clarified here with respect to Bing Chat/Copilot. To the extent Governing Board documents are additionally or instead responsive to other RFPs, such nonprivileged documents have also been produced.

### V.    RFP No. 43 (item 6 in your February 19 email)

In response to Plaintiffs' RFP Nos. 29 and 43, Microsoft confirms that it will produce responsive, nonprivileged documents concerning Microsoft's policies and procedures related to receiving, processing, or responding to the categories of complaints that Microsoft has agreed to produce in response to RFP Nos. 28 and 42. Microsoft has already produced these documents: Microsoft produced its publicly-available policies and procedures regarding copyright infringement and/or Bing Chat/Copilot and other products, as well as its internal company policy regarding copyright, trademarks. and publicity rights.

### VI.    "Blocked data" (item 8 in your February 19 email)

We reviewed the documents cited in your February 4 letter (MSFT_AICPY_000236139 and MSFT_AICPY_000203552) that appear to refer to sites or data as "blocked." As previewed at our meet and confer, Microsoft's position is that the activities reflected in these documents are not relevant to the issues in these actions, as they occurred well after the conduct alleged. The documents are dated October 2023 and appear to refer to data not even yet fully identified or gathered, let alone used, for any LLM training. Accordingly, these documents and this topic do not relate to the LLMs at issue in these actions,[3] and Microsoft does not have any obligation to search for and produce the documents Plaintiffs request beyond what has already been produced.

---

[2] *See* https://blogs.microsoft.com/blog/2024/10/01/an-ai-companion-for-everyone/.

[3] To the extent Plaintiffs contend that additional models are within the scope of discovery, see *infra* Section VIII.

DMS_US.369731012.3

Counsel for *Authors Guild* and *Alter* Plaintiffs - 3 - March 5, 2025

### VII. "Copyright infringement announcement" (item 9 in your February 19 email)

Based on our investigation, the announcement referenced in the document cited in your February 4 letter (MSFT_AICPY_000230260) is the announcement of Microsoft's "Copilot Copyright Commitment," first announced on September 7, 2023; expanded as of November 15, 2023; and called the "Customer Copyright Commitment" as of January 5, 2024. *See* https://blogs.microsoft.com/on-the-issues/2023/09/07/copilot-copyright-commitment-ai-legal-concerns/. This program is not relevant to the issues in these actions. While Microsoft will produce the announcement, Microsoft will not search for and produce additional documents on this topic.

### VIII. Microsoft-OpenAI 2024 negotiations and agreement(s) (item 10 in your February 19 email)

As your February 19 email noted, we "expressed doubt" at the meet and confer that this material is relevant to these actions. We continue to have doubts and request that Plaintiffs provide a more fulsome explanation of the relevance of this information. At the meet and confer, Plaintiffs pointed to a "court order" that in Plaintiffs' view conclusively establishes that certain more recent OpenAI models are within the scope of discovery. There are two problems with Plaintiffs' cursory explanation. First, whether certain models are within the scope of discovery does not mean that all negotiations and agreement-related documents dated in 2024 are relevant, or proportional. We don't agree that models trained and/or used after the conduct alleged being within the scope of discovery goes hand-in-hand with anything and everything else occurring after the conduct alleged being within the scope of discovery.

Second and more importantly, we do not agree with Plaintiffs' characterization of the "court order" Plaintiffs rely on. Judge Wang never considered or ruled on whether the models OpenAI had already agreed to are the appropriate scope of discovery. *See* Tr. 98–104 (Dec. 3, 2024).[4] Indeed, OpenAI's brief in response to this motion made clear that OpenAI did not agree that some of the models for which it had agreed to provide discovery were properly within the scope of these actions in the first place. *See* ECF No. 281 at 1 ("This lawsuit, filed by book authors, centers around specific books datasets that were used to train GPT-3 and 3.5. OpenAI agreed to provide discovery into these and a number of *other* models—including GPT-1, GPT-2, GPT-3.5 Turbo, GPT-4, and GPT-4 Turbo—and, beyond that, to supplement its response to Interrogatory 11 . . . .") (cleaned up). Regardless, OpenAI's agreement to produce certain information as a compromise is not a concession that the information is relevant and within the appropriate scope of discovery, and OpenAI's agreement on the contrary does not bind Microsoft. And again, the Court's order did not decide the issue of what models at minimum are within the scope of discovery. *See* ECF No. 293 at 2.

In sum, Microsoft does not agree that discovery into models beyond those Microsoft has identified in its own discovery responses—which are based on the conduct alleged in Plaintiffs' complaint and which Microsoft has consistently and clearly identified for months—is relevant or proportional. And agreements between Microsoft and OpenAI post-dating the conduct alleged are equally irrelevant and disproportionate.

---

[4] Even if Judge Wang had so ruled on Plaintiffs' motion at ECF No. 270 with respect to OpenAI, this ruling did not involve any motion with respect to Microsoft, who maintains different relevance and burden arguments.

DMS_US.369731012.3

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

### IX. Supplemental response to ROG Nos. 4 and 5 and related productions (item 12 in your February 19 email)

As we discussed, Microsoft intended to supplement its response to Interrogatory No. 5 once it was able to produce the agreements themselves, as indicated by the current response's reference to Rule 33(d). Regarding production of the agreements, Microsoft intended to produce them once the parties had finalized the amendment to the protective order to allow for an outside-counsel only confidentiality designation. We raised this modification with Plaintiffs beginning on January 13 and waited several weeks while Plaintiffs first considered the proposal generally and then considered the draft stipulation we provided. Finally, on February 18, Plaintiffs responded that they wished to wait to modify the protective order until deposition protocol-related amendments could be finalized. Given this delay on modifying the protective order, we will re-evaluate whether we are able to produce some of the responsive agreements with the protective order as-is. Microsoft will supplement its response to Plaintiffs' Interrogatory No. 5 in the coming days. No supplementation is needed for Interrogatory No. 4.

### X. Data inspection request

To recap this topic, Plaintiffs emailed on February 13 stating that you wished to inspect data that Plaintiffs believe Microsoft provided to OpenAI. Email from A. Freymann ("Based on documents we have reviewed, it appears that Microsoft provided web crawling data to OpenAI and that the crawler data captured books datasets."). At the February 18 meet and confer, we requested that Plaintiffs provide more information on the documents they were referring to so that Microsoft could properly evaluate the request, and Plaintiffs provided MSFT_AICPY_000591635 on February 21.

This document reflects the same discussion reflected in the documents addressed above in Section VI, and for the same reasons set out there—this document does not appear to relate to training data used for the relevant models—we do not believe further information in this area is within the scope of discovery.

### XI. Request for additional conferrals

The last section of Plaintiffs' February 19 email stated that Plaintiffs wish to confer on two additional topics. As to the first, Microsoft's responses to Plaintiffs' Third Set of RFPs, we note that Plaintiffs still have not provided the list of specific issues to be discussed. Microsoft served these responses over two months ago. As to the second, "the status of the production of due diligence material relating to Microsoft's investment in OpenAI," to the extent Plaintiffs are not seeing the number or type of documents you expected, we can confirm that Microsoft has conducted a reasonable investigation and produced the responsive, nonprivileged documents that exist. We will wait to hear from Plaintiffs about whether you still wish to confer further.

Counsel for *Authors Guild* and *Alter* Plaintiffs - 5 - March 5, 2025

Sincerely,

Jared B. Briant

cc: Counsel of Record