# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

1000 LOUISIANA
SUITE 5100
HOUSTON, TEXAS 77002
(713) 651-9366
FAX (713) 654-6666
www.susmangodfrey.com

_____

| SUITE 1400<br>1900 AVENUE OF THE AMERICAS<br>LOS ANGELES, CALIFORNIA 90067-6029<br>(310) 789-3100 | SUITE 3000<br>401 UNION STREET<br>SEATTLE, WASHINGTON 98101-2683<br>(206) 516-3880 | ONE MANHATTAN WEST<br>NEW YORK, NEW YORK 10001-8602<br>(212) 336-8330 |
|---|---|---|

Justin A. Nelson
Direct Dial (713) 653-7895

E-Mail jnelson@susmangodfrey.com

September 11, 2025

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

Re:   *In re. OpenAI, Inc., Copyright Infringement*, 25-md-3143 (SHS) (OTW)
      This document relates to: 23-cv-8292; 23-cv-10211

Dear Judge Wang:

Class Plaintiffs ("Plaintiffs") oppose a motion from OpenAI to compel responses to Requests for Production ("RFP(s)") Nos. 112, 114 and 118. *See* Dkt. 532. Plaintiffs have already agreed to produce all responsive documents pertaining to the asserted works and the Defendants' AI products at issue in the case. The Authors Guild has also produced ample documents relating to the book market in general, including AI-related income surveys. There is nothing else to compel that is either relevant or in the possession of Plaintiffs. The motion should thus be denied.

## Background

The dispute pertains to RFP Nos. 112, 114 and 118, which seek documents concerning actual or potential changes in Plaintiffs' books-related compensation and financial trends in the book industry.[1] Since the parties started conferring on these RFPs in May 2025, Plaintiffs have raised the same objections and offered the same explanations as to the scope of their production and why they would not produce any additional documents—all of which OpenAI omits from its motion:

---

[1] *See* Dkt. 532 at 2. Specifically, RFP No. 112 seeks documents concerning changes in Plaintiffs' book-related compensation over time, whereas RFP Nos. 114 and 118 pertain to documents relating to the Book Industry in generally.

September 11, 2025
Page 2

- The RFPs at issue are duplicative of other RFPs, specifically RFP Nos. 56-60,[2] in responsive to which Plaintiffs have already produced *extensive* documents. This includes sales reports, royalty reports, option payments, license payments, licensing and publishing agreements, covenants not to sue, and settlements. These documents show Plaintiffs' book-related compensation over time. As Plaintiffs explained to OpenAI, Plaintiffs do not possess documents pertaining to future income (*i.e.*, projections).

- Plaintiffs further agreed to produce and have produced any non-privileged documents discussing OpenAI or ChatGPT; those documents would inevitably encompass material sought by RFP Nos. 112, 114, and 118.

- In addition, the Authors Guild has also produced ample responsive documents, including documents and communications relating to and the results of the 2018 and 2023 Author Income Surveys, the 22 COVID-related Income Survey, and all Generative AI Surveys.[3] These documents speak directly to industry-wide financial trends and book-related compensation.

- Plaintiffs have only been withholding irrelevant documents, *i.e.*, documents pertaining to works *not* asserted in the complaint.

OpenAI failed to address these issues throughout the meet and confer process, and the letter motion is a continuation of OpenAI's unwillingness to deal with the substance of Plaintiffs' arguments. *See* **Ex. 1** (Sep. 8 email from Plaintiffs to OpenAI).

## Argument

Plaintiffs should not be compelled to produce these irrelevant and unduly burdensome documents in addition to the thousands of responsive documents they already provided to OpenAI.

***1. Plaintiffs have already produced all relevant documents in their possession.*** OpenAI claims that "Plaintiffs refuse to produce documents to" RFP Nos. 112, 114 and 118. Dkt. 532 at 1. That could not be further from the truth. As set forth above, Plaintiffs have already produced ample responsive documents showing authors' compensation over time and AI-driven financial trends in

---

[2] Nos. 56-57 (seeking documents re. compensation, received or anticipated, for exploitation of the asserted works, including sales reports, licensing payments, sales and royalty projections); Nos. 58-59 (seeking documents re. past, current or projected alleged markets for the asserted works and derivatives thereof, including consumer base, gross revenue, and overall market performance); No. 60 (seeking documents re. the valuation of the asserted works).

[3] By way of example, the 2023 Generative AI Survey includes data about questions such as "Do you think generative AI is a threat to the writing profession" or "How do you think AI will impact you personally and your future income in the writing profession?" or "Are you concerned that publishers will start using AI to generate books in whole or in part, replacing human authors or having authors edit AI-generated texts?" The Survey further shows that over 1,700 people answered each of these questions. In light of these documents, it is difficult to conceive why OpenAI believes it has not received documents from Plaintiffs in response to the RFPs at issue.

the book industry (*i.e.,* Authors Guild surveys). This is further supported by the fact that Plaintiffs agreed to run and produce documents for the following search term: *((lost OR losing OR losses OR damag\* OR harm\*) w/10 (sales OR revenue OR money)) w/20 (AI OR "artificial intelligence" OR "generative AI" OR genAI\* OR "generative artificial intelligence")*. This search term would have inevitably led to exactly the type of material OpenAI is seeking to obtain with RFP Nos. 112, 114, 118.

**2. Documents not produced to date are not relevant**.[4] OpenAI dedicates much of its motion to explaining why documents regarding the impact and significance of ChatGPT on the book industry are relevant. *Id*. at 3. However, Plaintiffs do not contest that. That's why Plaintiffs have already produced thousands of responsive documents. Plaintiffs merely contend that documents *beyond those* relating to works not asserted in the complaint and relating to other generative AI products that are not at issue in the case are irrelevant. OpenAI's motion does not offer a single argument explaining why that material is relevant. The motion merely explains why previous Orders allegedly have not addressed this particular issue (*e.g.*, *Authors Guild* Dkt. 289 or *NYT* Dkt. 344). However, there is a difference between saying that something has not been affirmatively found irrelevant and saying that something is relevant. Under Rule 26, it is OpenAI's burden to establish that the material it seeks is relevant. It has not done so.

**3. Searching for and producing additional documents would be unduly burdensome**. Finally, searching for additional material would be unduly burdensome. In order to uncover documents pertaining to *all works*, not just those asserted in the complaint, without time limitation (two of the RFPs at issue do not include a time limitation), would require running generic search terms, such as "book" or "compensation," across all Plaintiffs' documents. That would likely lead to thousands of documents per Plaintiff. Given that Plaintiffs have already produced ample documents, there is no basis to impose that burden on Plaintiffs.

In light of the foregoing, Plaintiffs respectfully request that the Court deny OpenAI's letter motion.

Sincerely,

SUSMAN GODFREY LLP

*/s/ Justin Nelson*
Justin Nelson

---

[4] The fact that N.D. Cal. plaintiffs agreed to producing some of this material prior to centralization does not matter and is not binding upon Class Plaintiffs. Indeed, OpenAI cites no authority for the proposition that it can obtain irrelevant discovery simply because another party pre-consolidation agreed to it.