UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

OPENAI, INC. COPYRIGHT
INFRINGEMENT LITIGATION

This Document Relates To
*All Putative Class Actions*

    23-cv-8292
    23-cv-10211
    24-cv-84
    25-cv-3291
    25-cv-3297
    25-cv-3482
    25-cv-3483

25-md-3143 (SHS) (OTW)

<u>OPINION & ORDER</u>

---

SIDNEY H. STEIN, U.S. District Judge.

    OpenAI[1] has moved to dismiss class plaintiffs' claim of direct copyright infringement based on the outputs of ChatGPT in the Consolidated Class Action Complaint captioned *David Baldacci et al. v. Open AI Inc. et al.*, No. 25-md-3143. OpenAI's motion is denied because class plaintiffs' allegations satisfy the elements of a *prima facie* claim of infringement as to at least some outputs of ChatGPT.

**I.  BACKGROUND**

    This action is the result of the consolidation of multiple putative class actions against OpenAI and Microsoft Corporation. On April 3, 2025, these class actions and other related actions against OpenAI and Microsoft were centralized in a multidistrict litigation ("MDL") before this Court. Following that centralization, the Court ordered class plaintiffs to file a Consolidated Class Action Complaint, which they did on June 13, 2025. (*See* Dkt. No. 183 ("CCAC").)

---

[1] This Order refers to defendants OpenAI Inc., OpenAI OpCo LLC, OpenAI GP LLC, OpenAI, LLC, OpenAI Global LLC, OAI Corporation LLC, OpenAI Holdings LLC, OpenAI Startup Fund I LP, OpenAI Startup Fund GP I LLC, and OpenAI Startup Fund Management LLC collectively as "OpenAI."

Class plaintiffs are authors and copyright holders of fiction and non-fiction books who assert claims on their own behalf and on behalf of a proposed class of other similarly situated authors. (*Id.* ¶¶ 2, 14.) In broad strokes, the Consolidated Class Action Complaint alleges that OpenAI and Microsoft infringed plaintiffs' copyrights in their books by downloading and reproducing plaintiffs' works, by using those reproduced works to train OpenAI's artificial intelligence ("AI") large language models ("LLMs"), and by creating infringing works in the outputs of OpenAI's LLM products, including ChatGPT. (*Id.* ¶¶ 2, 5–7, 13.) Because this motion concerns only the claim that ChatGPT's outputs infringe plaintiffs' copyrights, the Court will summarize the Consolidated Class Action Complaint's allegations (which are accepted as true for the purposes of this motion) regarding that claim in more detail.

OpenAI is a technology company founded in 2015 as a non-profit entity and relaunched in 2019 as a for-profit enterprise focused on researching and developing AI tools. (*Id.* ¶¶ 76–77.) OpenAI has created LLMs, which are generative AI systems designed to recognize input text and generate output text that mimics human writing in response to prompts. (*Id.* ¶¶ 56–59.) OpenAI's LLMs are typically referenced by sequential names consisting of "GPT" (standing for "Generative Pre-trained Transformer") followed by a hyphen and a number (*e.g.*, GPT-1, GPT-2, etc.). (*Id.* ¶ 80.) In November 2022, OpenAI released a consumer-facing chatbot called ChatGPT, which relied at the time on the GPT-3.5 LLM. (*Id.* ¶ 85.) ChatGPT's popularity "exploded" soon after it was released such that, by January 2023, the application had an estimated 100 million monthly active users, and the application had 200 million users by August 2024. (*Id.* ¶¶ 86–87.) This success—as well as the success of OpenAI's other products such as ChatGPT Enterprise, an application targeted at corporate clients—has earned OpenAI and Microsoft (which invested in OpenAI) billions of dollars. (*See id.* ¶¶ 78, 91–92, 94–95, 162, 164.)

LLMs are "trained" by supplying the LLMs with large amounts of text to copy and ingest in order for the LLMs to identify relationships between words in the training data, which reveals similarity in words' meanings and functions. (*Id.* ¶¶ 61–64.) LLMs such as OpenAI's GPT models function by breaking input text into "tokens" assigned to words or portions of words, translating those tokens into numerical sequences called "vectors," then using those vectors to map the location of tokens relative to one another in the models' training data. (*Id.* ¶¶ 59–60.) After an LLM has been trained, it can generate responses to user prompts that resemble human-authored text. (*Id.* ¶¶ 6, 66.) The final quality of an LLM is dependent on the quality of the dataset used to train it. (*Id.* ¶ 66.) Professionally authored, edited, and published books—such as those written by plaintiffs here—are the type of high-quality training data that enhance the quality of LLMs' outputs. (*Id.* ¶¶ 67–69.) OpenAI used datasets that included plaintiffs' copyrighted works to train its LLMs. (*Id.* ¶¶ 97–99.)

When prompted, ChatGPT can generate accurate summaries of books authored by plaintiffs and generate outlines for potential sequels to plaintiffs' books. (*Id.* ¶¶ 104, 107, 146.) The Consolidated Class Action Complaint does not include or attach the full text of any of these summaries or outlines but includes allegations such as:

> When prompted, ChatGPT accurately generated summaries of several of the Martin Infringed Works, including summaries for Martin's novels *A Game of Thrones*, *A Clash of Kings*, and *A Storm of Swords*, the first three books in the series *A Song of Ice and Fire*.
>
> When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for an alternate sequel to *A Clash of Kings*, one of the Martin Infringed Works, and titled the infringing and unauthorized derivative "A Dance With Shadows," using the same characters from Martin's existing books in the series *A Song of Ice and Fire*.
>
> When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for a prequel book to *A Game of Thrones*, one of the Martin Infringed Works, and titled the infringing and unauthorized derivative "A Dawn of Direwolves," using the same characters from Martin's existing books in the series *A Song of Ice and Fire*.
>
> When prompted, ChatGPT generated an accurate summary of the final chapter of *The Armageddon Rag*, one of the Martin Infringed Works.

(*Id.* ¶¶ 256–59.) The Consolidated Class Action Complaint includes similar allegations regarding the works of other named plaintiffs. (*See id.* ¶¶ 176–79 (Baldacci), 183 (Branch), 190–93 (Connelly), 201–04 (Day), 212–15 (Franzen), 221–22 (Golden), 226–27 (Greer), 234–237 (Grisham), 242–43 (Hwang), 247–48 (Klam), 256–59 (Martin), 267–70 (Picoult), 277 (Schiff), 280 (Shapiro), 287 (Authors Guild/Eberhart).)

OpenAI now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Consolidated Class Action Complaint's output-based infringement claim. OpenAI contends that the complaint fails to plausibly allege substantial similarity between plaintiffs' works and ChatGPT's outputs or to cite or attach examples of allegedly infringing outputs for the Court to consider when evaluating the issue of substantial similarity. (*See* Dkt. No. 325 ("Mot.").)

## II. LEGAL STANDARD

### A. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

3

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion to dismiss, a court must "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotations marks and citation omitted). In so doing, the Court may consider the facts set forth on the face of the complaint as well as "any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). In a copyright action, "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks and citations omitted).

Although the Court must accept as true all factual allegations in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. By the same token, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). "[F]act-specific question[s] cannot be resolved on the pleadings." *Id.* (alterations in original) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001)).

### B. Copyright Legal Standards

"As embodied in the United States Constitution, the purpose of copyright is '[t]o promote the Progress of Science and useful Arts.'" *Graham v. Prince*, 265 F. Supp. 3d 366, 376 (S.D.N.Y. 2017) (alteration in original) (quoting U.S. Const. art. I, § 8, cl. 8). "To effectuate this purpose, copyright law grants creators a limited monopoly over the dissemination of their original works." *Id.* (citing *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014)).

To establish a *prima facie* claim of infringement, a copyright owner "must demonstrate that (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020); 4 Nimmer on Copyright § 13D.10 (2025).

"The determination of the extent of similarity that will constitute a substantial, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." *Structured Asset*

4

*Sales, LLC v. Sheeran*, 120 F.4th 1066, 1078 (2d Cir. 2024) (quoting 4 Nimmer on Copyright § 13.03[A] (2024)); *see Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) ("The test for infringement of a copyright is of necessity vague."). "The standard test in determining substantial similarity is the 'ordinary observer test': whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other." *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 70 (2d Cir. 1999).

It is well-established that copyright does not protect an idea, but only its expression. *See* 17 U.S.C. § 102(b); *Reyher v. Child.'s Television Workshop,* 533 F.2d 87, 90–91 (2d Cir. 1976). "While the demarcation between idea and expression may not be susceptible to overly helpful generalization, it has been emphasized repeatedly that the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization." *Reyher*, 533 F.2d at 91. Stock themes, stock characters, and "'scenes a faire,' that is, scenes that necessarily result from the choice of a setting or situation," do not enjoy copyright protection. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986); *see Hogan v. DC Comics*, 48 F.Supp.2d 298, 309–10 (S.D.N.Y. 1999).

When a work contains both protectible and unprotectible elements, the "more discerning observer" test applies. That test asks whether there exists "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work]." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001); *see also Abdin*, 971 F.3d at 66. The Second Circuit has cautioned, however, that courts should not merely "dissect" the works at issue "into their separate components, and compare only those elements which are in themselves copyrightable." *Peter F. Gaito,* 602 F.3d at 66 (citation omitted). Instead, courts' principal task is to compare the works' "total concept and overall feel . . . as instructed by . . . good eyes and common sense." *Id.* (internal quotation marks and citations omitted); *see Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (directing courts to consider similarities in "total concept and feel, theme, characters, plot, sequence, pace, and setting"). "[I]n the end, [courts'] inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work." *Peter F. Gaito*, 602. F.3d at 66 (internal quotation marks and citation omitted).

"The question of substantial similarity is by no means exclusively reserved for resolution by a jury." *Id.* at 63. Indeed, "it is entirely appropriate for a district court to resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially

5

similar." *Id.* (internal quotation marks and citation omitted). Numerous district courts have resolved the substantial similarity question at the pleading stage for one or both of these reasons. *See, e.g., N.Y. Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 328 (S.D.N.Y. 2025); *Montgomery v. Holland*, 408 F. Supp. 3d 353 (S.D.N.Y. 2019), *aff'd sub nom. Montgomery v. NBC Television*, 833 F. App'x 361 (2d Cir. 2020); *Nobile v. Watts*, 289 F. Supp. 3d 527 (S.D.N.Y. 2017), *aff'd*, 747 F. App'x 879 (2d Cir. 2018); *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 162 (S.D.N.Y. 2024).

## III. ANALYSIS

### A. Preliminary Issues

Before turning to the substance of OpenAI's contention that the Consolidated Class Action Complaint fails to allege substantial similarity between plaintiffs' works and ChatGPT's outputs, the Court will address several preliminary issues raised by plaintiffs.

#### 1. *This motion is not barred by Federal Rule of Civil Procedure 12(g)(2).*

*First,* plaintiffs contend that OpenAI's motion to dismiss the output-based infringement claim in the complaint is barred by Rule 12(g)(2) because OpenAI failed to move to dismiss similar output-based infringement claims that had been asserted in *Tremblay v. OpenAI, Inc.*, No. 25-cv-3482—one of the underlying putative class actions—prior to the consolidation of the several class actions. (*See* Dkt. No. 454 ("Opp.") at 2–5.) OpenAI disputes that output-based infringement claims were at issue in the *Tremblay* action. (Dkt. No. 495 ("Reply") at 8.) The Court need not decide whether output-based infringement claims were at issue in *Tremblay* because, even assuming OpenAI's motion raises arguments it could have but failed to raise in its motion to dismiss in the *Tremblay* action, Rule 12(g)(2) does not bar a successive motion to dismiss in this circumstance.

Rule 12(g)(2) provides that, "[e]xcept as provided in Rule 12(h)(2) or (3)," a party that makes a motion pursuant to Rule 12 may not make another motion pursuant to that rule "raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2)—which sets out an exception from the Rule 12(g)(2) bar—provides that a defense of failure to state a claim upon which relief can be granted may be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by any motion under Rule 12(c); or (C) at trial."

"Courts in this District have . . . held that successive Rule 12(b)(6) motions are not procedurally improper." *Ballast v. Workforce7 Inc.*, No. 20-cv-3812, 2024 WL 307966, at *5 (S.D.N.Y. Jan. 25, 2024); *see, e.g., United States ex rel. Kolchinsky v. Moody's Corp.*, 238 F. Supp. 3d 550, 555 (S.D.N.Y. 2017) ("Rule 12 provides that while procedural defenses are

waived if omitted from a pleading or pre-answer motion, a defendant cannot waive the more fundamental 12(b)(6) defense—that the plaintiff has no legal right to recovery in the first place."); *Vega v. State Univ. of N.Y. Bd. of Trustees*, No. 97-cv-5767, 2000 WL 381430, at *2 (S.D.N.Y. Apt. 13, 2000) ("[S]uccessive motions to dismiss for failure to state a claim are not precluded by Rule 12(g)."); *Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 444 (S.D.N.Y. 1988) ("Rule 12 specifically allows for successive motions to dismiss for failure to state a claim."). And while some courts have refused to consider Rule 12(b)(6) arguments that could have been but were not advanced in an earlier Rule 12(b)(6) motion, courts have also noted that parties were able to "raise the identical failure-to-state-a-claim arguments by a Rule 12(c) motion as soon as they answered" pursuant to the Rule 12(h)(2)(B) exception. *Ballast*, 2024 WL 307966, at *5 (citing *Easton Rae, LLC v. Violet Grey, Inc.*, No. 21-cv-6234, 2023 WL 2691459 (S.D.N.Y. Mar. 29, 2023), and *Falcon v. City Univ. of N.Y.*, No. 15-cv-3421, 2016 WL 3920223 (E.D.N.Y. July 15, 2016)). Where, as here, "requiring Defendants to thusly re-file" identical failure-to-state-a-claim arguments in a Rule 12(c) motion "would be inefficient," the Court may consider the merits of a successive Rule 12(b)(6) motion. *Id.* Therefore, even assuming that the basis of OpenAI's motion to dismiss pursuant to Rule 12(b)(6) was available to it when it moved to dismiss a pre-consolidation class action complaint, the Court will consider the merits of OpenAI's motion because it would be inefficient to require OpenAI to make a substantively identical motion pursuant to Rule 12(c) after it answers the Consolidated Class Action Complaint.

### 2. *This motion is not barred by the January 19, 2024 stipulation in the* **Authors Guild** *action.*

*Second*, plaintiffs urge that OpenAI's motion is barred by a January 19, 2024 stipulation between the parties in the underlying action entitled *Authors Guild et al. v. OpenAI Inc. et al.*, No. 23-cv-8292 (the "*Authors Guild* action") in which OpenAI agreed not to move to dismiss then "currently-pleaded claims" and the parties to that action stipulated to various case scheduling deadlines. (*See* Opp. at 5–7; *Authors Guild v. OpenAI, Inc.*, No. 23-cv-8292, Dkt. No. 56.)

At the time of that stipulation, the then-operative amended complaint in the *Authors Guild* action included output-based infringement claims nearly identical to the output-based infringement claims pleaded in the Consolidated Class Action Complaint. *See, e.g.*, *Authors Guild* Dkt. No. 40 ¶ 149 ("When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for the next purported installment of *While the Patient Slept*, one of the Authors Guild Infringed Works, and titled the infringing and unauthorized derivative 'Shadows over Federie House,' using the same characters from Eberhart's existing book.").

7

It is apparent that the purpose of the January 19, 2024 stipulation was to facilitate a case schedule in the *Authors Guild* action which is no longer in place due to the advent of this MDL and a scheduling order for the MDL. (*See* Case Management Order No. 2, Dkt. No. 60.) The Court will not hold OpenAI to its concession in the January 19, 2024 stipulation not to seek to dismiss claims then pending in the *Authors Guild* action when the circumstances, case schedule, and identity of the plaintiffs have significantly changed following the centralization in the MDL and the consolidation of the *Authors Guild* action with the other class actions.

### 3. *The Court will consider the outputs submitted by plaintiffs in connection with this motion for the purposes of assessing substantial similarity.*

In addition to contending that plaintiffs fail to allege with sufficient factual specificity that the allegedly infringing outputs are substantially similar to plaintiffs' works, OpenAI faults plaintiffs for failing to physically attach any allegedly infringing outputs to the Consolidated Class Action Complaint. (*See* Mot. at 7–12.) In opposition, plaintiffs have submitted examples of allegedly infringing outputs referenced in the Consolidated Class Action Complaint and assert that the Court is entitled to consider these outputs in addition to the complaint's allegations for the purpose of evaluating substantial similarity. (Opp. at 13–14 (citing *Shull v. TBTF Prods. Inc.*, No. 18-cv-12400, 2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019)).)

A court may properly consider on a motion to dismiss documents that are incorporated into the complaint by reference, even where those documents are not attached to the complaint, or documents integral to the complaint's allegations. *See Chambers v. TimeWarner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (stating that a court on a motion to dismiss may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any document that is "integral" to the complaint because "the complaint relies heavily upon [that document's] terms and effect" (internal quotation marks omitted)); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *1 (2d Cir. Sep. 27, 2024) (summary order) ("In assessing the complaint's legal feasibility [for a motion to dismiss pursuant to Rule 12(b)(6)], the court may review any documents attached to the complaint as exhibits, incorporated by reference, or integral to its allegations." (internal quotation marks omitted)).

"To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *Lateral Recovery, LLC v. Cap. Merchant Servs., LLC*, 632 F. Supp. 3d 402, 436 (S.D.N.Y. 2022) (quoting *McKeefry v. Town of Bedford*, 18-cv-10386, 2019 WL 6498312, at 3 (S.D.N.Y. Dec. 2, 2019)).

"A document is considered integral to the complaint when 'the complaint relies heavily upon its terms and effect.'" *Rowe*, 2024 WL 4315128, at *1 (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

Here, the outputs plaintiffs submitted along with their opposition to OpenAI's motion were incorporated into the Consolidated Class Action Complaint by reference and are most certainly integral to the Consolidated Class Action Complaint's output-based infringement allegations. (*Compare, e.g.*, CCAC ¶ 256 ("When prompted, ChatGPT accurately generated summaries of several of the Martin Infringed Works, including summaries for Martin's novels *A Game of Thrones*, *A Clash of Kings*, and *A Storm of Swords*, the first three books in the series *A Song of Ice and Fire*."), *and* CCAC ¶ 257 ("When prompted, ChatGPT generated an infringing, unauthorized, and detailed outline for an alternate sequel to *A Clash of Kings*, one of the Martin Infringed Works, and titled the infringing and unauthorized derivative 'A Dance With Shadows,' using the same characters from Martin's existing books in the series *A Song of Ice and Fire*."), *with* Dkt. No. 454-7 ("Decl. Ex. F") (ChatGPT-generated summary of Martin's *A Game of Thrones* and outline for an alternative sequel to *A Clash of Kings* titled "A Dance with Shadows").) The Consolidated Class Action Complaint repeatedly makes "clear, definite and substantial reference[s]" to the outputs, *Lateral Recovery*, 632 F. Supp. 3d at 436, and plaintiffs' output-based infringement claim "stands or falls," *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006), on the outputs themselves, *Peter F. Gaito*, 602 F.3d at 64 ("[T]he works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." (internal quotation marks and citations omitted)). The Court will therefore consider the outputs submitted by plaintiffs for the purposes of analyzing whether the outputs are substantially similar to plaintiffs' works.

### B. Merits

Turning to the merits, the Court must determine whether the Consolidated Class Action Complaint adequately pleads an output-based infringement claim. It does.

To make out a *prima facie* claim of copyright infringement, plaintiffs "must demonstrate that (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Yurman Design*, 262 F.3d at 110 (internal quotation marks and citation omitted).

1. *The Consolidated Class Action Complaint adequately alleges actual copying.*

The Consolidated Class Action Complaint squarely alleges that OpenAI had access to plaintiffs' works and that ChatGPT's allegedly infringing outputs are based on plaintiffs' works. (*E.g.*, CCAC ¶¶ 97–99.) This satisfies the first element—actual copying—of a *prima facie* infringement claim.

2. *A reasonable jury could find that the allegedly infringing outputs are substantially similar to plaintiffs' works.*

The second element—substantial similarity—is the gravamen of this motion. In assessing substantial similarity, "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito*, 602 F.3d at 64 (internal quotation marks and citations omitted). In light of the Court's determination that the outputs submitted by plaintiffs in their opposition to OpenAI's motion were incorporated into and integral to the Consolidated Class Action Complaint, the determinative question is whether a "reasonable jury, properly instructed, could find that the [the allegedly infringing outputs] are substantially similar" to plaintiffs' copyrighted works. *Id.* at 63 (citation omitted).

Class plaintiffs' works contain both copyrightable elements—such as characters, plot, and setting, *see, e.g.*, *Castle Rock Entm't v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998)—and non-copyrightable elements—such as stock themes, stock characters, scenes a faire, and abstract ideas, *see, e.g.*, *Walker*, 784 F.2d at 50. As a result, the "more discerning observer" test should apply, and the relevant question is whether there exists "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work]." *Boisson*, 273 F.3d at 272 (citation omitted).

A more discerning observer could reasonably conclude that the allegedly infringing outputs are substantially similar to plaintiffs' copyrighted works.[2] Though the ChatGPT-generated summaries submitted by plaintiffs do not recount "[e]very intricate plot twist and element of character development" in the original works, *Twin Peaks*

---

[2] Though the Court concludes that the "more discerning observer" test is applicable, its conclusion would be the same if it were to apply the "ordinary observer" test because the Court concludes that an ordinary observer could reasonably conclude the allegedly infringing outputs are substantially similar to plaintiffs' copyrighted works.

10

*Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1373 (2d Cir. 1993), they are most certainly attempts at abridgment or condensation of some of the central copyrightable elements of the original works such as setting, plot, and characters. In this regard, the summaries are conceptually similar to—although admittedly less detailed than—the plot summaries in *Twin Peaks* and in *Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736 (S.D.N.Y. 2017), where the district court found that works that summarized in detail the plot, characters, and themes of original works were substantially similar to the original works. Indeed, the ChatGPT-generated summaries "include many specific details" drawn from the original works, *Colting*, 270 F. Supp. 3d at 742, such as the names and traits of characters as well as key plot points.

    An illustrative example is the output summarizing George R.R. Martin's *A Game of Thrones* from his *A Song of Ice and Fire* book series, which the Court reproduces here in full.

> "A Game of Thrones" is the first book in the "A Song of Ice and Fire" series by George R.R. Martin. Here's a detailed summary:
>
> **Setting:**
>
> The story is set in the fictional continents of Westeros and Essos. The Seven Kingdoms of Westeros are ruled from the Iron Throne in the capital city, King's Landing. The majority of the story takes place in Westeros, which is experiencing a long summer that has lasted a decade but is warned to face an impending long winter.
>
> **Prologue:**
>
> Members of the Night's Watch, a sworn brotherhood tasked with defending the realm from threats beyond the Wall (a giant ice structure in the North), are attacked by mysterious and deadly creatures known as the White Walkers, thought to be mere legends.
>
> **Main Plot Points:**
>
> 1. **Stark Family in Winterfell:**
>
> - Eddard (Ned) Stark is the Warden of the North, ruling from Winterfell.

- King Robert Baratheon, Ned's old friend, visits Winterfell to ask Ned to become his Hand of the King after the previous Hand, Jon Arryn, died under suspicious circumstances.

- Ned reluctantly accepts to investigate Jon Arryn's death.

- Ned's wife, Catelyn, receives a letter from her sister Lysa (Jon Arryn's widow) suggesting the Lannisters might be behind Arryn's death.

- Bran, Ned's young son, accidentally witnesses Queen Cersei Lannister and her brother Jaime Lannister in an intimate relationship. Jaime pushes Bran off a tower to keep the secret, but Bran survives, albeit in a coma.

2. **King's Landing:**

- Ned arrives in the capital with his daughters Sansa and Arya.

- He becomes embroiled in court politics and discovers that none of King Robert's children are biologically his; they are products of incest between Cersei and Jaime Lannister.

- King Robert dies in a hunting accident, which was a plot by Cersei.

- Ned attempts to challenge Joffrey's claim to the throne but is betrayed by Petyr Baelish and imprisoned for treason.

- Arya escapes the Red Keep, while Sansa remains as a hostage.

3. **The Lannisters:**

- Tyrion Lannister, Jaime and Cersei's dwarf brother, is wrongly accused by Catelyn Stark of attempting to murder Bran and is taken prisoner.

- In a trial by combat at the Eyrie (Lysa Arryn's stronghold), Tyrion gains his freedom.

4. **Daenerys Targaryen in Essos:**

- Across the Narrow Sea on the continent of Essos, the last surviving Targaryens, Viserys and Daenerys, are in exile after being overthrown by King Robert.

- Viserys marries off Daenerys to Khal Drogo, a powerful Dothraki warlord, in hopes of using Drogo's army to reclaim the throne.

- Daenerys eventually embraces her role as Khaleesi (queen) and stands up to Viserys. Viserys is killed by Drogo.

- Daenerys becomes pregnant but loses her child and husband due to the witchcraft of a healer named Mirri Maz Duur. In grief, Daenerys hatches three petrified dragon eggs she had received as wedding gifts, giving birth to three dragons.

5. **The North and Beyond the Wall:**

- Jon Snow, Ned Stark's bastard son, joins the Night's Watch. He befriends Samwell Tarly and discovers unsettling changes beyond the Wall, including the re-emergence of the White Walkers.

- The direwolves, the Stark children's pets, play significant roles throughout. Ghost, Jon's direwolf, discovers a cache of obsidian weapons.

**Ending:**

Ned Stark is executed on the orders of Joffrey Baratheon, leading to the Stark family and the North rallying for war against the Lannisters. Robb Stark, Ned's eldest son, is proclaimed King in the North.

Throughout the book, themes of political intrigue, betrayal, honor, and power dynamics are heavily explored, setting the tone for the series.

This summary covers the major events of "A Game of Thrones" but doesn't dive deep into every subplot or character arc. The

> novel is rich in detail, worldbuilding, and character development.

(Decl. Ex. F. at 2–3.)

A more discerning observer could easily conclude that this detailed summary is substantially similar to Martin's original work, including because the summary conveys the overall tone and feel of the original work by parroting the plot, characters, and themes of the original.[3]

Similarly, a more discerning observer could properly conclude that outlines for potential sequels to plaintiffs' works that were generated in response to prompts to ChatGPT are substantially similar to plaintiffs' original works. Another output based on George R.R. Martin's works is illustrative:

> Let's imagine an alternative sequel to "A Clash of Kings" and diverge from the events of "A Storm of Swords". We'll call this sequel "A Dance with Shadows."
>
> **A Dance with Shadows: An Alternative Sequel to A Clash of Kings**
>
> 1. **The Iron Throne's New Claimant**:
>
> - A distant relative of the Targaryens, Lady Elara, lands in Westeros with a claim to the Iron Throne and an army she raised in Essos. She quickly garners support, further complicating the War of the Five Kings.
>
> 2. **Robb's Southern Alliance**:
>
> - Instead of being betrayed, Robb Stark creates a surprise alliance with Renly Baratheon's remaining supporters, drastically changing the balance of power in the war.

---

[3] OpenAI is mistaken that the outputs at issue in this action are analogous to the summaries of news articles that the Court determined were not substantially similar to copyrighted works in its decision in *N.Y. Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283 (S.D.N.Y. 2025). The outputs at issue in that action merely summarized non-copyrightable elements of the original news articles—*i.e.*, "the facts contained in [the news] articles"—and differed "in style, tone, length, and sentence structure" from the original articles. *Id.* at 328. By contrast, the outputs submitted by plaintiffs in this action incorporate such copyrightable elements of plaintiffs' original works as plot, setting, and characters.

3. **Tyrion's Exile**:

- After the Battle of Blackwater, Tyrion Lannister is falsely blamed for the near loss and is sent into exile, where he starts his own campaign against his family's treacherous allies.

4. **Sansa's Escape**:

- Sansa Stark manages to escape King's Landing with the help of an unlikely ally, Ser Dontos, and takes refuge with Lady Olenna in Highgarden.

5. **Daenerys' Divergence**:

- Rather than journeying to Slaver's Bay, Daenerys hears of Lady Elara's claim and decides to move directly to Westeros, landing in Dorne and allying with the Martells.

6. **Bran's Southern Journey**:

- Bran, instead of heading North, decides to go South to warn his family of the impending threat from the White Walkers. Along the way, he discovers more about his warging abilities and has visions of past Targaryen rulers.

7. **The Night's Watch & The Wildlings**:

- Jon Snow brokers peace with Mance Rayder without the involvement of Stannis. The Night's Watch and the Wildlings forge an alliance to face the supernatural threats from beyond the Wall.

8. **The Greyjoy Rebellion**:

- Balon Greyjoy declares himself King of all Westeros and starts a massive naval campaign, causing chaos on all coasts and drawing the Lannisters' attention away from their war with the Starks.

9. **Arya's Return**:

- Arya Stark, instead of going to Braavos, becomes an apprentice to Lady Stoneheart and learns guerrilla warfare tactics, striking against Lannister outposts.

10. **Dragonstone's Secrets**:

- Stannis, fueled by Melisandre's prophecies, discovers ancient dragon-related magic in Dragonstone that gives him a new, mystical edge in his claim for the throne.

11 **Cersei's Ambitions**:

- Seeing threats on all sides, Cersei Lannister resorts to using wildfire in various battles, gaining a fearsome reputation and leading a brutal campaign against her enemies.

12. **The Blackfyre Revelation**:

- Lady Elara is revealed to be a descendant of the Blackfyre line, causing division among her supporters and introducing a new dimension to the Targaryen legacy.

13. **The Citadel's Prophecy**:

- Sam Tarly uncovers an old prophecy at the Citadel which hints at a union of the direwolf and the dragon as Westeros' only hope against the impending darkness.

14. **The Great Council**:

- With wars ravaging Westeros, a Great Council is called at Harrenhal. The major houses must decide on a single ruler to face the White Walker threat, leading to intense political games and unexpected alliances.

15. **The Shadows Beyond**:

- Reports come of a mysterious and dark force assisting the White Walkers, introducing a new villain - a rogue sect of the Children of the Forest aiming to reclaim Westeros.

> The novel would set up for an epic confrontation between the combined forces of Westeros and the supernatural entities threatening to plunge the continent into eternal winter.
>
> Again, this is purely speculative and meant for imaginative fun! It's always intriguing to envision alternative paths a story might take.

(Decl. Ex. F. at 4–5.)

There is no doubt that a reasonable jury applying the more discerning observer test could determine that this output is substantially similar to Martin's original work based on the output's incorporation of such copyrightable elements of Martin's original work as setting, plot, and characters.

The Court need not address each output submitted by plaintiffs, which are, by and large, significantly less detailed than the two examples set forth above. It is sufficient to defeat OpenAI's motion to dismiss that plaintiffs have alleged some outputs that a reasonable jury could find are substantially similar to plaintiffs' works.

### 3.  *This opinion makes no conclusions regarding fair use.*

As set forth above, the Court concludes that the Consolidated Class Action Complaint adequately states a *prima facie* claim of copyright infringement based on ChatGPT's outputs. Nothing in this Opinion is intended to suggest a view on whether the allegedly infringing outputs are protected as fair uses of the original works. *See Graham*, 265 F. Supp. 3d at 377 ("A court cannot engage in the fair use inquiry until it has been presented with facts relevant to evaluating the fair use factors." (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985))); *id.* ("Due to the fact-sensitive nature of the inquiry, courts generally do not address the fair use defense until the summary judgment phase." (citing *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016))).

## IV. CONCLUSION

The Consolidated Class Action Complaint adequately states a *prima facie* claim of copyright infringement based on ChatGPT's outputs. OpenAI's motion to dismiss the

17

Consolidated Class Action Complaint's output-based infringement claim is therefore denied.

Dated: New York, New York
        October 27, 2025

SO ORDERED:

_/s/ Sidney H. Stein_
Sidney H. Stein, U.S.D.J.