


February 17, 2026

**VIA ECF**

Honorable Ona T. Wang
United States District Court
500 Pearl Street
New York, NY 10007

Re: *In re OpenAI, Inc., Copyright Infringement Litig.*, 1:25-md-3143-SHS-OTW
 This document relates to the following Class Cases: Case No. 1:23-cv-08292, Case No. 1:23-cv-10211, Case No. 1:24-cv-00084, Case No. 1:25-cv-03291, Case No. 1:25-cv-03482, Case No. 1:25-cv-03483.

Dear Judge Wang:

Microsoft respectfully submits this supplemental brief in response to Class Plaintiffs' ("Plaintiffs") renewed efforts to obtain financials on Microsoft's entire suite of M365 products. The Court in its Order, dated February 6, 2026 (ECF 1279), having now reviewed three rounds of briefing on these issues, limited its inquiry and the focus of this financials dispute to the consumer M365 Copilot product that was released in January 2025. Ignoring that directive, Plaintiffs appeared at the court-ordered meet and confer, delivered an argument that was nearly verbatim to their argument to the Court in January, and proceeded to seek everything they sought in December 2025 and more—sweeping financial information for every M365 application across the consumer version released in January 2025 **and** the enterprise version released in September 2025, and marketing materials that the Court did not even address in its Order (and appears to have rejected when the parties were before it in January).

Whether we are considering the enterprise version of M365 or the consumer version of M365, the attenuated theory of relevance coupled with the immense burden on Microsoft to collect the financials that encompass Microsoft's entire M365 offering and all its numerous applications remain the same. Specifically, identifying the financials for the consumer offering released January 2025 (which is notably **after** the parties' agreed-upon date cut-off for financial documents) presents a burden just as onerous as it is for the enterprise offering, which Microsoft described in its January 5, 2026 filing. ECF 1087. Microsoft has produced extensive financial documents in this case, including revenue and cost information for the licenses it has with both enterprise and consumer customers for add-on Copilot AI functionality (and a variety of other financials associated with its Copilot offering and relationship with OpenAI). The Court should deny Plaintiffs' motion and put this dispute to rest.

**I. The Additional Financial Discovery Plaintiffs Seek is Neither Relevant Nor Proportional to the Needs of the Case.**

 **a.** *Plaintiffs' requests hinge on an untenable theory of relevance.*

Plaintiffs' theory of relevance is untenable—as Microsoft has explained at length. Their motion rests on the proposition that they are entitled to obtain sweeping financial discovery without even articulating—let alone substantiating—any conceivable causal or logical connection between the copyrighted works at issue and Microsoft's profits tied to M365. Because Plaintiffs offer no coherent theory linking the works to the profits they target, their requests exceed the scope of permissible discovery and should be denied.

Although Plaintiffs concede that they cannot disgorge Microsoft's profits without proving causation, they understate their burden at the discovery stage. At minimum, courts in both the Second Circuit and other jurisdictions routinely require a plausible, non-speculative nexus showing that the defendant's profits bear *some relation* to the allegedly infringed work before compelling burdensome financial discovery. *See, e.g., Structured Asset Sales, LLC v. Sheeran*, 433 F. Supp. 3d 608, 612 (S.D.N.Y. 2020) (denying motion to compel financial discovery based on plaintiff's failure to "allege facts adequate to state a causal relationship between the [copyrighted song at issue]" and the financial discovery requested); *Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016) (affirming district court's denial of motion to compel tax returns based on plaintiff's inability to "establish a nexus between [any] increased profits and the use of his photo"); *Lucky Break Wishbone Corp. v. Sterling Jewelers Inc.*, 2011 WL 13233570, at *6 (D. Minn. Aug. 23, 2011) (denying motion to compel financial discovery where "the profits the plaintiff is seeking are attenuated or distant from the alleged use of the copyrighted work"); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.,* 262 F. Supp. 2d 923, 929 (N.D. Ill. 2003) (denying financial discovery because "[w]hatever profits are realized on this development, after engineering, excavation, design, construction, and sale activities, among other things, are completed, they will be so attenuated or distant from the alleged use of the copyrighted development plan, as to render Ocean Atlantic's extensive discovery at Liberty Grove meaningless").

Plaintiffs argue that it suffices at the discovery stage to allege that "Microsoft derived profits from its sale of products incorporating OpenAI's infringing LLM functionality." ECF 1311 at 3. But the law requires more. Plaintiffs' threadbare allegation omits any mention of the specific copyrighted works at issue, let alone any link between those works and the sweeping Microsoft revenues Plaintiffs seek. Courts routinely reject such unanchored theories of relevance, and for good reason: it strains credulity to suggest that the alleged inclusion of George R.R. Martin's *A Game of Thrones* in a training dataset induced any consumer to subscribe to M365 Outlook for its scheduling tools. Plaintiffs' theory is implausible on its face and should be rejected.[1]

---

[1] As Microsoft explained in its January 5, 2026, letter brief (ECF 1087), the cases Plaintiffs cite do not lead to a different conclusion. In *Prolo*, it was conceivable that the defendant obtained profits from reproducing the at-issue photograph on an album cover and social media sites. *Prolo v. Blackmon*, 2022 WL 2189643, at *9 (C.D. Cal. Mar. 25, 2022). In *Viktor*, the court noted the possible causal nexus between the defendant's profits tied to a music video and the overt reproduction and display of the plaintiff's artwork in the video. *Viktor v. Top Dawg Ent. LLC*, 2018 WL 5282886, at *3 (S.D.N.Y. Oct. 24, 2018). And in *Kaseberg*, the court limited the scope of financial discovery to revenue directly linked to discrete episodes of a show that featured the plaintiff's copyrighted joke, thus rejecting plaintiff's demand for "thousands, if not hundreds of thousands, of documents that are simply not relevant to any damages calculation." *Kaseberg v.*

### a. *The burden associated with the production of Consumer M365 financials is the same as it is for Enterprise M365.*

Microsoft detailed the burden associated with producing financials for the enterprise version of M365 in its filing on January 5, 2026 and the accompanying Declaration of Jacob Thornburgh. ECF 1087. The burden of identifying and collecting the consumer M365 offering is just as onerous. As detailed in the Second Supplemental Declaration of Jacob Thornburgh, Microsoft offered Copilot Pro as its add-on feature for consumers to enable them to use Copilot with applications like Word and Excel. Thornburgh Second Supp. Decl. ¶7. It offered that product for a separate fee and continued to offer that separate product until October 2025. *Id*. Microsoft has produced revenue and costs—and thus profits—related to that product and the specific offering of AI functionality for consumer use through December 2024 – the cut-off date the parties have applied to financial documents. *Id*. In January 2025, after that cut-off date, Microsoft continued to offer Copilot Pro (and encouraged users of Copilot to continue that subscription), but also started integrating Copilot into its consumer M365 offering. *Id*. ¶8. Just like with the enterprise offering, consumer M365 comprises numerous applications, some of which offer Copilot functionality and some of which do not. *Id*. Pricing for this product is complicated by a system of credits and limits that are specific to the application in use by the user. *Id*. Adequately investigating and providing financial information related to the consumer offering of M365 requires all the same steps articulated in January for the enterprise offering: Microsoft would need to perform an in-depth analysis of each application and integration within M365 to determine the nature of the offering, whether consumers had been using it, whether it offers Copilot functionality, how it works, how it is marketed, how value is attributed to its features and where and how its financials are kept and whether revenue and costs can be isolated to that application or integration. *Id*. ¶10. This investigation likely requires interviewing at least dozens of new people concerning applications that have not been part of this case to date. *Id*. ¶11.

Plaintiffs downplay the difficulty of identifying the relevant financial information for these products. They first argue that it must be easy to do. Since Microsoft has already produced extensive financials in this matter, it can attest to the complexity of that exercise. Producing the financial documents that have been provided in this case has already required extensive consultation with multiple members of the business teams in a process that extended over a multi-month period. *Id.* ¶12. And that is the process *after* the investigation above is performed. Plaintiffs' suggestion that the burden associated with Microsoft having to defend itself against this wide-ranging slate of additional applications and products that Plaintiffs seek financials for is rebutted by their own argument. Plaintiffs argue that they are entitled to this revenue because it is relevant to disgorgement and statutory damages, but what is relevant to those inquiries are *profits*, not revenue. That means revenues alone will not suffice; costs and other apportioning factors must be identified in order to calculate any actual profits associated with the infringement. This burden is disproportionate to the needs of the case, especially here where Microsoft already identified and produced revenue and costs for the licensing fees associated with Copilot's AI functionality. *See,*

---

*Conaco, LLC*, 2016 WL 3997600, at *8 (S.D. Cal. July 26, 2016). In each of these cases, the causal nexus between the copyrighted work in suit and the defendant's profits was far less attenuated than the nexus Plaintiffs suggest here.

*e.g., Coll v. Stryker Corp.*, 2017 WL 3052498, at *3 (D.N.M. July 12, 2017) (denying motion to compel financial discovery based on burden associated with collecting "tens of thousands or hundreds of thousands" of documents located across multiple databases, which would require "a team of at least ten employees working full time for many weeks, if not months").

With fewer than two weeks left in fact discovery, the parties are already sprinting to coordinate, prepare for, take, and defend a packed slate of nearly 50 depositions nationwide over the next two weeks—all while simultaneously gearing up for the expert discovery phase. The Court should deny Plaintiffs' motion and permit the parties to focus their efforts on meeting the fact discovery deadline.

## II. Plaintiffs' Request for "Marketing Documents" is Improper, Overly Broad, and Disproportionate.

The Court has already made clear that Microsoft need not produce additional "documents sufficient to show how Microsoft has marketed or advertised refreshed Copilot's ability to assist with obtaining or drafting journalism content *or books*." 1/15/2026 Hr'g Tr. at 205:11-15 (emphasis added); *id*. at 207:21 ("THE COURT: This is my ruling: No"). The Court likewise made no mention of marketing materials in its February 6 Order directing the parties to meet and confer regarding Microsoft Office financials. ECF 1279 at 1. Yet, Plaintiffs once again seek a wide-ranging list of "marketing documents" that has expanded in scope since their last request. While Plaintiffs seemed to seek "marketing documents advertising Copilot's ability to write books" (ECF 1310 at 2, 5-6), Plaintiffs now also want "internal presentations on Microsoft 365's writing abilities, internal presentations on marketing Microsoft 365's LLM capabilities to consumers" (*Id*. at 5) and communications and drafts of advertising materials and blog posts. When Microsoft pointed out at the meet and confer that this was an entirely new and much broader request at this late stage that was not covered by any RFP, Plaintiffs did not identify any responsive RFP. They now point to RFP No. 101, but Plaintiffs fail to mention that Microsoft objected to that Request over nine months ago on May 12, 2025—indicating that it would not search for or produce documents—and Plaintiffs never raised any issue with that response.

As noted and discussed with the Court at the January conference, Microsoft has already produced documents relevant to Plaintiffs' request. In response to a request from the News Plaintiffs, Microsoft collected and produced all marketing materials it could reasonably locate concerning Bing Chat and Copilot. That should suffice and should include any materials that were located that address Copilot's ability to generate written works. This broader request for M365 materials about "Microsoft 365's writing abilities" and "Microsoft 365's ability to write creative content" (ECF 1310 at 5) is untethered to the issues in the case. M365 and its Office suite of products are of course designed to assist with writing; that is Word's job. Plaintiffs are asking for documents about what the product does in general, without limitation. As Microsoft explained during the parties' February 12 meet and confer, there is no convenient list or repository of advertisements that is labeled by product and capability that would allow Microsoft to easily retrieve public advertisements highlighting, for example, M365's ability to draft books. Moreover, communications about such materials and drafts of the materials would involve new custodians and search terms. Microsoft has produced many documents about the capabilities of Bing Chat / Copilot already, and Plaintiffs' request that Microsoft undertake new searches for documents about

the capabilities of LLM technology operating within M365 is untimely, overbroad, and disproportionate to the needs of the case. It should be denied.

For the reasons stated above and in Microsoft's prior filings regarding this dispute, the Court should respectfully deny Class Plaintiffs' motion.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| <u>/s/ Annette L. Hurst</u> | <u>/s/ Jared B. Briant</u> |
| Annette L. Hurst | Jared B. Briant |

*Counsel for Defendant Microsoft Corporation*